# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

CONSTANCE T. TRACEY,

    Plaintiff,

v.

RECOVCO MORTGAGE MANAGEMENT LLC d/b/a SPROUT MORTGAGE, and HUGH GOLDSON,

    Defendants.

Civil Action No. 20-3298 (MAS) (TJB)

**MEMORANDUM ORDER**

This matter comes before the Court upon Plaintiff Constance T. Tracey's ("Plaintiff") Application for Entry of an Order to Show Cause with Mandatory Injunctive Relief. (ECF No. 2.) Defendants Recovco Mortgage Management LLC d/b/a Sprout Mortgage ("Sprout") and Hugh Goldson ("Goldson") (collectively, "Defendants") opposed (ECF No. 13), and Plaintiff replied (ECF No. 14).

## I.   INTRODUCTION

At the time of this Memorandum Order, the country is grappling with the uncertainty of the coronavirus crisis. It is against this backdrop that the Court reviews Plaintiff's Application and is in the unenviable position to evaluate the legal ramifications of an unfortunate set of facts.

Plaintiff, the owner of several rental properties, is an 81-year-old woman seeking to purchase her dream home. Sprout is a mortgage company dealing with the current economic downturn. The dispute concerns a misrepresentation made by a Sprout representative that funding for Plaintiff's mortgage was approved. Following the Sprout representative's misrepresentation, Plaintiff received the keys to the home and quickly moved in her belongings, only to find out hours

later that Sprout failed to disburse the funds. Sprout contends it cannot fund the mortgage for reasons related to the financial crisis. Faced with the seller's threats to remove her from the home, Plaintiff sued the mortgage company and its representative, seeking to compel them to immediately fund the mortgage.

The Court is sympathetic to the parties' difficult situations, but for the reasons set forth below is unable to grant the relief Plaintiff requests.

## II. **BACKGROUND**

This matter arises from Plaintiff's attempt to purchase her dream home (the "Property"). (Ver. Compl. ¶ 7, ECF No. 1; Pl.'s Moving Br. 6, ECF No. 3.) Plaintiff is the owner of five residential rental properties. (Pl.'s Reply Br. 2.) Plaintiff alleges that, on Friday, March 20, 2020—prior to the closing of the Property on Monday, March 23, 2020—the title closing agent provided Goldson, a Sprout agent, with "revised [closing documents] for closing." (Ver. Compl. ¶ 9.) Goldson replied via e-mail message, "Great, we match. Docs have been sent." (*Id.* ¶ 10.) On Monday, March 23, after the signing, execution and notarization of the closing documents provided by Defendants, the title closing agent forwarded the closing documents to Goldson "for funding approval." (*Id.* ¶ 14.) Goldson replied via e-mail message, "Docs look great. Funding approved." (*Id.* ¶ 15.) Plaintiff alleges that, upon Goldson's representation, the title closing agent informed Plaintiff the closing was complete. (*Id.* ¶ 16.) Plaintiff left the closing with the keys and moved into the Property. (*Id.* ¶ 17.) That same evening, Plaintiff received news that Sprout refused to fund the mortgage. (*Id.* ¶ 18.)

Defendants allege that, "[i]n light of the financial crisis created by the COVID-19 pandemic, Sprout became unable to fund the loan after its warehouse lenders stopped funding non-qualified mortgage loans like the one for which Plaintiff applied." (Defs.' Opp'n Br. 4 (citing Goldson Decl. ¶¶ 11-12, ECF No. 13-4), ECF No. 13.)

On March 26, 2020, Plaintiff filed suit against Defendants, alleging: (1) promissory and equitable estoppel; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) negligent misrepresentation; (5) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1604(b) and Federal Reserve Board Regulation Z; (6) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*; (7) tortious interference with contract; and (8) violation of the New Jersey Consumer Fraud Act ("NJCFA"). (*See generally* Ver. Compl.) For each count, Plaintiff demands: "[s]pecific [p]erformance by way of permanent [m]andatory [i]njunctive [r]elief, ordering Sprout Mortgage to complete the funding of Plaintiff's mortgage loan forthwith" and other damages. (*E.g.*, Ver. Compl. ¶ 24.) In the present Application, Plaintiff seeks a court order mandating that Defendants immediately fund the $618,750 mortgage loan for the Property.[1] (Pl.'s Moving Br. 5.)

---

[1] For the purposes of this Memorandum Order, the Court considers Plaintiff's Application as one for a preliminary injunction because Plaintiff's Moving and Reply Briefs do not mention permanent injunction. It is unclear, however, whether Plaintiff's Application seeks a preliminary or permanent injunction. Plaintiff's Verified Complaint, on which she relies heavily, and the proposed Orders included with her Application seek a mandatory permanent injunction. (*See generally* Ver. Compl.; Pl.'s Proposed Order to Show Cause with Mandatory Injunctive Relief ("(1) [Ordered] that a hearing to determine whether to grant *permanent* Mandatory Injunctive Relief on the issue of whether to enter Judgment Ordering Specific Performance. . . ." (emphasis added)), ECF No. 3-1; Pl.'s Proposed Order and Judgment for Permanent Mandatory Injunctive Relief, ECF No. 3-2.)

"The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 215 n.9 (3d Cir. 2014). Accordingly, when Plaintiff seeks a permanent injunction, she will have to show actual success on the merits of her claims.

3

## III. DISCUSSION[2]

A "[p]reliminary injuncti[on] . . . is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). Plaintiff bears the burden of establishing she is "likely to succeed on the merits . . .[,] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).

The first two factors are "gateway factors" and are "most critical." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017). If these gateway factors are met, a court then considers the remaining two factors. *Id.* "A plaintiff's failure to establish any element in [her] favor renders a preliminary injunction inappropriate." *Nutrasweet Co. v. VitMar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999).

"Moreover, where the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008). To that end, mandatory preliminary injunctions should be granted "sparingly." *United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1181 (3d Cir. 1976).

---

[2] "In deciding a motion for a preliminary injunction, a district court applies the federal, not state, standard. . . . This is true even in a diversity case in which a court is applying state substantive law." *Peterson v. HVM LLC*, No. 14-1137, 2015 WL 3648839, at *3 (D.N.J. June 11, 2015) (internal quotation marks omitted) (citations omitted).

4

### A. Likelihood of Success on the Merits

Plaintiff argues that she has shown a reasonable probability of success on the merits. (Pl.'s Moving Br. 5.) In her Moving Brief, Plaintiff recounts certain facts from the Verified Complaint and re-lists the Counts stated therein. (*Id.* at 5–6.) Plaintiff, however, fails to cite any Federal or New Jersey law, stating only:

> It is well settled in both Federal law and New Jersey law, that the behavior of Defendants is actionable, and subjects Defendants to a lawsuit for compensatory, punitive and exemplary damages as applicable, and injunctive relief, together with application for attorney fees, sanctions, and costs of court.

(*Id.* at 5.)

In opposition, Defendants address the merits of each claim. Defendants argue that Plaintiff cannot succeed on her contract claim because, *inter alia*, a loan is consummated upon disbursement of funds and the loan was never funded. (Defs.' Opp'n Br. 11–12 (citing *Franklin v. Fin. Freedom Acquisition, LLC*, No. 12-7884, 2014 WL 1316093 (D.N.J. April 1, 2014); *In re Velardi*, 547 B.R. 147, 155 (M.D. Pa. Bankr. Ct. 2016). As to Plaintiff's negligent misrepresentation claim, Defendants argue that Plaintiff "is experienced enough to know that funding approval is not synonymous with disbursements of the funds" and whether Plaintiff justifiably relied on the information Goldson provided to the title closing agent should be a matter for a jury. (Defs.' Opp'n Br. 17.)

On reply, Plaintiff addresses Defendants' arguments regarding her contract and negligent misrepresentation claims. As to her contract claim, Plaintiff argues that the mortgage funding agreement does not contain a force majeure clause and that Defendants, accordingly, have no such defense. (Pl.'s Reply Br. 9–12.) As to her negligent misrepresentation claim, she alleges that the title closing agent showed her Goldson's message on his phone and argues that Plaintiff reasonably

relied on that communication to her detriment. (Pl.'s Reply Br. 5–6.) Plaintiff also points to Goldson's certification, in which he admitted to making a mistake. (*Id.*)

The standard to obtain preliminary injunctive relief is heavy, particularly where injunctive relief alters the status quo. Allegations contained in a complaint and attorney argument without citation to the law is insufficient to meet this heavy burden. *See, e.g.*, *Cent. Jersey Freightliner, Inc. v. Freightliner Corp.*, 987 F. Supp. 289, 295–96 (D.N.J. 1997) ("A preliminary injunction is not appropriate in the instant case because plaintiffs have failed to provide sufficient evidence that the above[-]mentioned factors favor relief. . . . Plaintiffs' mere allegations are insufficient to establish a likelihood of success on the merits of that claim."). Because Plaintiff fails to provide adequate substantive analysis on any of her claims in her seven-page Moving Brief, relying mainly on her Complaint, and only addresses her breach of contract and negligent misrepresentation claims on reply, the Court addresses whether Plaintiff has established a likelihood of success on those claims alone.

To demonstrate a likelihood of success on the merits, Plaintiff must show that she "can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)." *Reilly*, 858 F.3d at 179. "[W]hether a party has met this threshold will necessarily vary with the circumstances of each case . . . [and] the elements of the movant's claims. . . ." *Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 77 (3d Cir. 2017).

To state a prima facie case for breach of contract, a plaintiff must plead: (1) "that the parties entered into a contract containing certain terms"; (2) "that [the plaintiff] did what the contract required [her] to do"; (3) "that [the defendant] did not do what the contract required [it] to do, defined as a breach of the contract"; and (4) "that [the defendant's] breach, or failure to do what

the contract required, caused a loss to the plaintiff." *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (internal quotation marks omitted) (citation omitted).

Here, Plaintiff alleges that Defendants contractually agreed to fund her mortgage (Ver. Compl. ¶ 26.) Plaintiff, however, does not provide this contract or cite to relevant terms of such a contract. (*See generally* Ver. Compl.; Pl.'s Moving Br.; Pl.'s Reply Br.) The Verified Complaint does not cite to any extrinsic documents, and the Moving Brief only includes as exhibits copies of "relevant emails" and the Closing Documents. Plaintiff does not provide any mortgage commitment letter or the like.[3] Plaintiff's Verified Complaint also did not otherwise adequately allege facts to support each contractual element. Plaintiff, accordingly, did not demonstrate the likelihood of success on the merits of her breach of contract claim.

Under New Jersey law, "to prove a claim of negligent misrepresentation, a plaintiff must demonstrate that: (1) the defendant negligently provided false information; (2) the plaintiff was a reasonably foreseeable recipient of that information; (3) the plaintiff justifiably relied on the information; and (4) the false statements were a proximate cause of the plaintiff's damages." *McCall v. Metro. Life Ins. Co.*, 956 F. Supp. 1172, 1186 (D.N.J. 1996) (citing *Karu v. Feldman*, 574 A.2d 420 (N.J. 1990)).

Here, Plaintiff has not demonstrated that she justifiably relied on Goldson's statement or that his statement was a proximate cause of her damages. As the owner of several other residential properties, Plaintiff cannot be said to have the same experience and knowledge as the average person, and whether she reasonably relied on Goldson's e-mail message alone to move into the Property remains a significant factual dispute. Moreover, other experienced parties were at the

---

[3] To the extent that Plaintiff alleges Goldson's misrepresentation has contractual implications, Goldson's authority—apparent or implied—presents a significant factual dispute.

closing, including those who presumably handed her the key to the Property.[4] Plaintiff, therefore, did not demonstrate the likelihood of success on the merits of the negligent misrepresentation claim. Furthermore, Plaintiff does not dispute that a loan transaction does not consummate until the funds are disbursed. Because discovery may shed light on these factors, the Court grants Plaintiff expedited discovery. *See infra* Section IV.

Based on Plaintiff's submissions, the Court finds that Plaintiff has not met her heavy burden to show likelihood of success on the merits of her claims.[5]

B. <u>**Immediate Irreparable Harm**</u>

Plaintiff argues that she will suffer irreparable harm absent injunctive relief. (Pl.'s Moving Br. 6.) Plaintiff avers that, if Defendants do not fund the mortgage loan, the seller "has made it clear that he (a) will retain [Plaintiff's] $40,000.00 down payment and (b) will have the County Sheriff or the Township Police Department forcibly remove her[] from her new home on Friday March 27." (*Id.* at 4.) Plaintiff also argues that she will suffer immediate irreparable harm because a dream house is not fungible. (*Id.* at 6.) She alleges that the Property is a "very unique property: it is a historical home situated on [nineteen] acres, and it even includes a working goat farm with

---

[4] Moreover, Plaintiff does not seek an injunction against the seller or any other parties against whom she may be able to seek relief. It appears that a real estate agent oversaw the transaction. (*See* Defs.' Opp'n Br. 1–2.) The closing took place at an attorney's office. (Ver. Compl. ¶ 8.) A representative of the title company attended the closing. (*Id.* at ¶ 9.) While a Sprout representative stated "funding approved" to the title company's representative at the closing, Sprout did not fund the loan at the closing. (*Id.* at ¶¶ 15, 18.) The Seller, nevertheless, gave Plaintiff the keys to the property. (*See id.* ¶ 17.) Plaintiff took the keys and moved into the home even though Sprout had not yet funded the loan. (*Id.*) In spite of the multiple parties involved in the underlying transaction, Plaintiff only filed suit against Sprout and only sought specific performance from Sprout. (*See generally id.*) Indeed, Defendant has argued that certain of these parties are indispensable under Federal Rule of Civil Procedure 19. (Defs.' Opp'n Br. 22.)

[5] Plaintiff has not cited precedent in which a court ordered a mortgage company to fully fund a residential loan as a form of injunctive relief. Indeed, Plaintiff failed to cite a case in which a court ordered specific performance requiring a mortgage company to fund a residential loan.

six goats on the property and the goats [were] included in the transaction." (*Id.*) Furthermore, Plaintiff alleges that she will be forced to look for alternate housing "which amid the present C[OVID]-19 [p]andemic could[,] by definition[,] threaten her health and life." (*Id.* at 6–7.)

A movant has the burden of establishing a "clear showing of immediate irreparable injury," *Louis v. Bledsoe*, 438 F. App'x 129, 131 (3d Cir. 2011) (citation omitted). Merely "[e]stablishing a risk of irreparable harm is not enough." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). "[T]he injury created by a failure to issue the requested injunction must be of a peculiar nature, so that compensation in money cannot atone for it." *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994) (citation omitted). "[T]he claimed injury cannot merely be possible, speculative[,] or remote." *Laidlaw, Inc. v. Student Transp. of Am.*, 20 F. Supp. 2d 727, 766 (D.N.J. 1998) (internal quotation marks omitted) (citation omitted). "Moreover, where the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington*, 528 F.3d at 179.

Plaintiff has not demonstrated immediate irreparable harm. Notably, Plaintiff has failed to cite legal authority, binding or persuasive, in support of her argument that any alleged losses are not compensable by monetary damages. Also, Plaintiff had previously quantified her anticipated damages. On March 24, 2020, in an e-mail message to Sprout, Plaintiff provided a list of "Total Damages" incurred or about to be incurred as a result of Sprout's failure to fund her mortgage. (Pl.'s Mar. 24, 2020 E-Mail Message to Sprout, Ex. G to Defs.' Opp'n Br., ECF No. 13-3 at *27–29.) Plaintiff included on the list of "[e]xpenses about to be incurred": "Hotel Expense, 90 days (estimate) @ 250/night" totaling "$22,500.00." (*Id.* at *29.) It appears, therefore, even Plaintiff anticipated potential compensation by way of monetary damages.

9

In addition to the loss of her down payment, which is compensable by damages, Plaintiff raised concerns regarding COVID-19. (*Id.* at 6–7.) Plaintiff's allegations of potential harm from COVID-19 are speculative. As the country—and specifically New Jersey—is in the midst of a coronavirus outbreak and is unsure about the coming days, the Court appreciates Plaintiff's concerns. Even so, Plaintiff has not demonstrated that she is entitled to the requested relief from the only Defendant she filed suit against. *See also supra* note 4 (discussing other parties against whom Plaintiff has not sought relief).

As Plaintiff has not demonstrated likelihood of success on the merits and irreparable harm—the most critical of the preliminary injunction factors—the Court does not consider the remaining two elements.

### C. Preliminary Injunction Bond

The Court also notes that Plaintiff's Application makes no reference to a preliminary injunction bond, and failure to require such a bond can be reversible error. *See Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 210 (3d Cir. 1990).

## IV. EXPEDITED DISCOVERY

The Court finds good cause to allow expedited discovery. "[E]xpedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *Phila. Newspapers v. Gannett Sattellite Info. Network*, No. 98-2782, 1998 WL 404820, at *2 (E.D. Pa. July 15, 1998) (citation omitted). Following expedited discovery, if appropriate, Plaintiff may file a renewed application for a preliminary injunction hearing.

V.  **ORDER**

**IT IS** on this 3rd day of April 2020 **ORDERED** that:

1. Plaintiff's Application for Entry of an Order to Show Cause with Mandatory Injunctive Relief (ECF No. 2) is **DENIED**; and

2. Plaintiff may conduct expedited discovery.[6]

                                                                                                                            **MICHAEL A. SHIPP**
                                                                                                                            **UNITED STATES DISTRICT JUDGE**

---

[6] The Honorable Tonianne J. Bongiovanni, U.S.M.J., will oversee expedited discovery and adjudicate any discovery-related disputes. The parties shall submit a joint proposed scheduling order or meet with Judge Bongiovanni to set an expedited discovery schedule.